[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14214

_____

CHRIS RONNIE,

Petitioner,

*versus*

OFFICE DEPOT, LLC,

Intervenor,

ADMINISTRATIVE REVIEW BOARD,
U.S. DEPARTMENT OF LABOR,

Respondents.

_____

Petition for Review of a Decision of the
Department of Labor
Agency No. 2018-SOX-00006

_____

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

WILSON, Circuit Judge:

This case presents us with an opportunity to clarify what a whistleblower plaintiff must allege to prove he had a "reasonable belief" that his employer violated the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A. After careful review, and with the benefit of oral argument, we deny the petition.

**I.**

The petitioner, Christian Ronnie, was employed at Office Depot as a senior financial analyst. He was responsible for, among other things, ensuring data integrity. One of Ronnie's principal duties was to calculate and report a metric called "Sales Lift." Sales Lift is a metric designed to quantify the cost-reduction benefit of closing redundant retail stores. Essentially, it measures the change in sales at one Office Depot location after the closure of another nearby Office Depot store. A higher Sales Lift indicates that the customers of the closed Office Depot are taking their business to the other Office Depot location, rather than switching to a competitor. A higher Sales Lift thus justifies the store-closure strategy.

To calculate Sales Lift, Office Depot sent sales figures to a third-party analytics company, Applied Predictive Technologies

(APT).  APT calculated future sales projections without assuming any store closures.  Office Depot then compared the APT projections with the actual sales figures following the closures.  The difference between these figures was interpreted as the Sales Lift—a metric important to Office Depot and its shareholders seek to optimize as a "key strategic initiative."[1]

Ronnie identified two potential accounting errors that he believed signaled securities fraud related to the Sales Lift.  First, he alleged that Office Depot pulled from the wrong data set to establish projected sales, which overinflated Sales Lift anywhere from 30% to 55% and consequently overinflated revenue retention after store closures.  Second, Ronnie identified that Office Depot calculated Sales Lift incorrectly by using two different base pre-closure sales data sets.  Office Depot provided APT a pre-closure revenue data set (APT sales) that APT then used to calculate projected sales.  Later, Office Depot used a different pre-closure revenue data set (GSC sales) to compare against the APT projected sales data.  In other words, the base pre-closure revenue data that Office Depot provided to APT should have been identical to the set later used to calculate Sales Lift.  Ronnie discovered that they were not.

Ronnie reported both issues to his superiors the week he discovered them—on February 25, 2016.  For the first issue, he was able to correct the model.  That error was significant, as one

---

[1] Office Depot's 2015 and 2016 Security and Exchange Commission 10-K filings identified "store closures may not result in the benefits or cost savings at levels anticipated" as a major risk.

supervisor, Lauren Goldberg, feared that she would lose her job over it.  For the second issue, Ronnie recommended that the supervisors correct the Sales Lift error by only using the APT pre-closure data in the future for both the projected sales calculation and the ultimate Sales Lift calculation.  The supervisors appeared to appreciate the gravity of the Sales Lift error, as they memorialized in writing that Ronnie had found "a significant difference in APT sales and GSC sales."

Ronnie expected that his team would implement his suggested change immediately; however, they claimed they first needed to understand the discrepancy before they could correct the error.  Ronnie's supervisors thus assigned him the task of investigating the root cause of the discrepancy—first on March 3, 2016, and then again on March 8, 2016, and March 15, 2016. Ronnie was also told multiple times not to make any changes to the calculation until the team understood the reason for the differences.  For example, Goldberg specifically told him they could not make the change "without being 100% confident that it is the right thing to do."  And Ronnie's supervisors indicated that they looked forward to Ronnie's report on his research into the discrepancy.

Ronnie alleges that after he reported the issue, his relationship with his boss, James Hoganson, became strained.  According to Ronnie, he stopped receiving invitations to the weekly all-hands meeting and instead was asked to do clerical work like stapling papers.  Hoganson also frequently reprimanded Ronnie when his reports were incomplete or late, even though Ronnie had no control

over when he received the reports to compile.  Ronnie began to fear he was being retaliated against and, on March 8, 2016, he emailed Human Resources (HR) to ask for protection from retaliation for reporting the inaccuracies.

On March 10, 2016, he emailed Office Depot's Information Technology (IT) department to investigate why the data they extracted was different from the APT data.  On March 16, 2016, he emailed his supervisors with a more granular analysis detailing the exact differences between the APT and GSC data, but this analysis did not identify the cause of the differences.  He alleges, without evidence in the record, that he asked IT to meet with him to discuss the cause and he did not hear back.

By April 7, 2016, Ronnie still had not figured out the discrepancy, and his supervisor issued a Performance Correction Document with a "final warning" stating that he had failed to timely complete the task of determining the cause of the discrepancy between the APT and GSC data.

On April 15, 2016, Ronnie finally met with IT.  A few days later, on April 19, 2016, he planned to meet with his supervisors to report the results of his conference with IT.  Instead, he was terminated at that meeting for failing to perform the task of identifying the cause of the data discrepancy.

Ronnie timely filed a *pro se* complaint with the Department of Labor's Occupational Safety and Health Administration (OSHA), claiming Office Depot violated 18 U.S.C. § 1514A.  OSHA dismissed his complaint.  Ronnie appealed, requesting a hearing

before an administrative law judge (ALJ).  Following discovery, Office Depot moved for summary decision, arguing that Ronnie had neither shown either he was engaged in protected activity or that any alleged protected activity caused his termination and that the undisputed facts showed Ronnie was discharged due to his poor work performance and unprofessionalism.  In support of its motion, Office Depot attached Ronnie's deposition, copies of performance evaluations of Ronnie, several email chains between Ronnie and his superiors, and the Performance Correction Document that Ronnie received.

The ALJ granted Office Depot's motion for summary decision, finding "there was no genuine issue of material fact as to an essential element of Complainant's claim—whether complainant engaged in protected activity."  The ALJ concluded that Ronnie failed to establish an objectively reasonable belief that fraud had occurred.

Ronnie appealed the ALJ's ruling to the Administrative Review Board (ARB).  The ARB affirmed.  *Christian Ronnie v. Office Depot, Inc.*, ARB No. 2019–0020, 2020 WL 6117919 (ARB Sept. 29, 2020).

Ronnie timely petitioned for review of the ARB's decision in this court, and we appointed counsel.  Office Depot also intervened at that time.  This Court issued the following question to the parties: "What evidence must a Sarbanes-Oxley whistleblower plaintiff present to establish that he 'reasonably believe[d]' that the

20-14214                  Opinion of the Court                        7

conduct he reported violated one of the statutes or rules identified in 18 U.S.C. § 1514A(a)(1)?"

## II.

For whistleblower complaints under SOX, the Administrative Procedure Act (APA) governs. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A); 5 U.S.C. § 706(2). Under the APA, this Court will only overturn an ARB decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1132 (11th Cir. 2012). This Court "does not reweigh the evidence or substitute its judgment for that of the ARB, but reviews the entire record to determine if the decision reached is reasonable and supported by substantial evidence." *Fields v. U.S. Dep't of Lab. Admin. Rev. Bd.*, 173 F.3d 811, 814 (11th Cir. 1999) (per curiam). Additionally, this Court reviews the ARB's legal conclusions de novo, *Stone & Webster*, 684 F.3d at 1132, although this Court gives "[a]ppropriate deference" to "statutory interpretation by the ARB," *Fields*, 173 F.3d at 813.

Further, "[a] party may move for summary decision, identifying each claim or defense—or the part of each claim or defense—on which summary decision is sought." 29 C.F.R. § 18.72(a). Summary decision is permitted where "there is no genuine dispute as to any material fact and the movant is entitled to decision as a matter of law." *Id.*

### III.

The whistleblower protection provision of SOX, 18 U.S.C. § 1514A, prohibits publicly traded companies from retaliating against their employees who provide information or assist in an investigation regarding conduct the employee reasonably believes violates SEC regulations.

To prevail on a SOX claim, an employee must prove by a preponderance of the evidence that (1) he engaged in protected activity, (2) the employer knew or suspected that the employee engaged in a protected activity, (3) the employee suffered an adverse action, and (4) an inference could be made that the protected activity was a contributing factor in the unfavorable action. 29 C.F.R. § 1980.104(e)(1)–(2).

SOX statutory language articulates that in order to establish "protected activity," the complainant must show that he "reasonably believes" that the conduct complained of constitutes a violation of the laws listed at Section 1514. *Sylvester v. Parexel Int'l LLC*, No. 07-123, 2011 WL 2517148, at *11 (Dep't of Labor May 25, 2011). As a threshold matter, the complainant must report conduct that falls into one of six categories enumerated by Congress in 18 U.S.C. § 1514A(a)(1): mail fraud, wire fraud, bank fraud, securities fraud, any SEC rule or regulation, or any federal law relating to fraud against shareholders.

The ARB maintains that whether an employee reasonably believes his employer's conduct is violative is determined by a mixed subjective and objective test. That is, a court must find that

20-14214            Opinion of the Court            9

the employee *himself* believed that the alleged conduct violated SOX, *and* that a reasonable person would believe the conduct violated SOX. *Sylvester*, 2011 WL 2517148, at *11.

In order to satisfy the objective requirement, the complainant must present evidence to establish his reasonable belief of the alleged violation. The key inquiry, then, becomes what evidence is required to establish reasonableness. Our consideration of this issue attempts to articulate a balance between protecting employees from retaliation and protecting employers from baseless allegations.

To find this balance, we look to other circuits who have addressed this same question. The Third and Sixth Circuits found *Sylvester* to provide the best guidance and do not require plaintiffs to put forth "information sufficient to form an objectively reasonable belief" of fraud. *Wiest v. Lynch*, 710 F.3d 121, 132 (3rd Cir. 2013); *accord Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015). By contrast, the Second and Fourth Circuits employ a totality of the circumstances test where the petitioner does not have to identify the SOX provision at issue, but must make some showing of scienter, materiality, reliance, or loss in order to enjoy SOX protection.[2]

---

[2] *See Northrop Grumman Sys. Corp. v. U.S. Dep't of Labor, Admin. Rev. Bd.*, 927 F.3d 226, 235 n.9 (4th Cir. 2019) ("[T]he plain text of the statute compels us to conclude that the reasonableness of an employee's belief must be measured against the specific statutory provisions in § 1514A(a)(1) requiring approximation of the elements of shareholder fraud in this case."); *Nielsen v. AECOM*

To make a showing of protected activity, the complainant must put forth sufficient information about the alleged wrongful conduct to show that a reasonable person in his position would believe the wrongdoing amounted to a SOX violation. To be clear, this does not require the complainant to articulate the *specific provision* of § 1514A he alleges his employer's conduct violates. *Sylvester*, 2011 WL 2517148, at *15–17. While doing so may strengthen his proposition, a complainant will not be penalized for failing to identify the specific SOX provision at issue.

In determining what information sufficiently paints a picture of reasonable belief, we employ a totality of the circumstances test based on knowledge available to a reasonable person in the same factual circumstances—and with the same training and experience[3]—as the complainant. Relevant to the totality of the circumstances is whether the employer acted with the requisite scienter, whether the misstatement was material, whether the misstatement was relied upon, and whether it yielded economic loss.

In adopting a totality of the circumstances test, we also note that while the employee need not "definitively and specifically" prove each element of fraud, he must make more than a

---

*Tech. Corp.*, 762 F.3d 214, 221 n.6 (2d Cir. 2014) (observing that "to be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific" crimes).

[3] *Sylvester*, 2011 WL 2517148, at *12; *Thibodeau v. Wal-Mart Stores, Inc.*, ARB No. 2017–0078, 2020 WL 8182902, at *6 (ARB Dec. 17, 2020) (per curiam) (en banc).

conclusory allegation.  *See Nielsen*, 762 F.3d at 224.  Mere speculation or suspicion is insufficient to establish a genuine issue of material fact as to reasonable belief.  *See Livingston v. Wyeth*, 520 F.3d 344, 354 (4th Cir. 2008).

## IV.

As an initial matter, the ARB applied the correct legal standard to assess whether Ronnie engaged in protected activity.  The ARB explained that the complainant must have "an objectively reasonable belief" and must "complain about conduct that he or she believes would reasonably fall under one of the enumerated categories."  *Ronnie*, 2020 WL 6117919, at *3.

We now turn to the ARB's summary decision that there was no genuine issue of material fact as to whether the complainant engaged in protected activity.  Reviewing the totality of the circumstances, Ronnie did not set forth sufficient evidence to support an inference that a reasonable person in his position would find Office Depot's conduct to be violative of SOX.

Ronnie asserts that Office Depot intentionally manipulated sales data in order to mislead or deceive, but he did not support his conclusion. He does not allege any scienter on the part of Office Depot, nor does he identify the materiality of the data error.[4]  He merely claims that the error was important and that his

_____

[4] We also note that, in his deposition, Ronnie testified that he was "not saying [Office Depot] intentionally" used GSC sales instead of APT sales for calculating the Sales Lift metric.

management tried to "cover it up" by requesting—openly and repeatedly—that he complete the difficult task of identifying the cause of the error.  It is unclear how managers insisting on finding the cause of a data inconsistency comports with an allegation that they sought to cover it up.[5]

Simply put, Ronnie's assertions that Office Depot intentionally manipulated sales data and that his assigned task of investigating the discrepancy was a stalling tactic are mere speculation, which alone is not enough to create a genuine issue of fact as to the objective reasonableness of Ronnie's belief.  *See Livingston*, 520 F.3d at 353–54.

Additionally, while Ronnie did not identify which SOX provision he believed Office Depot violated, it is worth noting that the failure to do so is not weighed against him. Such a showing may have strengthened his case, but his failure to do so is not what makes his allegations unreasonable. Instead, Ronnie's failure to demonstrate key factors of fraud—notably, scienter and materiality—does not support a conclusion that a reasonable person in his same position with his same education, training, and experience would believe the data error constituted a violation.

Therefore, it was not arbitrary or capricious for the ARB to conclude that Ronnie did not engage in protected activity.

---

[5] *Cf. Day v. Staples*, 555 F.3d 42, 58 (1st Cir. 2009) ("A company's explanations given to the employee for the challenged practices are also relevant to the objective reasonableness of an employee's belief in shareholder fraud.").

## V.

Because Ronnie failed to allege sufficient facts to establish that a reasonable person with his training and experience would believe this conduct constituted a SOX violation, the ARB's decision was not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, we **DENY** the petition for review.

**PETITION DENIED.**